IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

| | | |
|---|---|---|
| BRITTANY SPILLER<br>6521 Hidden Lake Loop, Apt 204<br>Fayetteville, NC 28304 | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | **COMPLAINT FOR DAMAGES** |
| UNITED HEALTHCARE SERVICES, INC.<br>1 Healthcare Drive<br>Eden Prairie, Minnesota 55344 | ) ) ) ) ) | **JURY DEMAND ENDORSED HEREIN** |
| **Serve Also:**<br>UNITED HEALTHCARE<br>SERVICES, INC.<br>c/o United Agent Group, Inc.,<br>registered agent<br>15720 Brixham Hill Ave Ste 300<br>Charlotte, NC 28277 | ) ) ) ) ) ) ) ) | |
| Defendant | | |

Plaintiff, Brittany Spiller, by and through undersigned counsel, as her Complaint against

Defendant United Healthcare Services, Inc. ("United Healthcare") states and avers the following:

## PARTIES

1. Spiller is a resident of the city of Fayetteville, county of Cumberland, state of North Carolina.

2. United Healthcare is a corporation that has a Certificate of Authority to transact business in North Carolina.

3. United Healthcare was at all times hereinafter mentioned an employer within the meaning of 42 U.S.C. § 2000e *et seq.*

4. United Healthcare was at all times hereinafter mentioned an employer within the meaning of 29 U.S.C. § 2601 *et seq.*

**JURISDICTION & VENUE**

5. United Healthcare hires citizens of the state of North Carolina, contracts with companies in North Carolina, is incorporated in North Carolina, has its principal place of business in North Carolina, and owns or rents property in North Carolina. As such, the exercise of personal jurisdiction over United Healthcare comports with due process.

6. United Healthcare hired Spiller to work as a remote employee. Spiller informed United Healthcare that she would be working in North Carolina. The wrongs herein alleged occurred in North Carolina and were perpetrated by United Healthcare and its employees working with Spiller while she worked remote from North Carolina. As such, this Court has personal jurisdiction over United Healthcare.

7. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 1341 in that Spiller is alleging a Federal Law Claim under the Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.* ("FMLA"), and 42 U.S.C. § 1981.

8. Venue is proper in this District because the wrongs herein alleged occurred in this District.

**ADMINISTRATIVE PROCESS**

9. Within 180 days of the conduct alleged below, Spiller filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") against United Healthcare, Charge No. 433-2025-01755 ("Charge of Discrimination").

10. On or about September 30, 2025, and within 180 days of the conduct alleged below, Spiller amended her Charge of Discrimination ("Amended Charge of Discrimination").

11. On or about September 30, 2025, the EEOC issued and mailed a Notice of Right to Sue letter to Spiller regarding Spiller's Amended Charge of Discrimination.

2

12. Spiller received her Right to Sue letter from the EEOC for Spiller's Amended Charge of Discrimination in accordance with 42 U.S.C. § 2000e-5. A copy has been attached hereto as Plaintiff's Exhibit A.

13. Spiller has filed this Complaint within 90 days of the issuance of the Notices of Right to Sue.

14. Spiller has properly exhausted her administrative remedies.

## TITLE VII COVERAGE

15. At all times referenced herein, United Healthcare was an "employer" within the meaning of 42 U.S.C. § 2000e(b), in that it was engaged in an industry affecting commerce and had fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year.

16. At all times referenced herein, Spiller was an "employee" within the meaning of 42 U.S.C. § 2000e(f), in that she was an individual employed by an employer.

## FMLA COVERAGE

17. At all times referenced herein, United Healthcare employed fifty (50) or more employees for twenty (20) or more workweeks during the calendar years of 2023, 2024, and 2025 between and among its corporate headquarters office, warehouse(s) and/or storage facilities, customer work sites, and the office to which Spiller reported, which are located within seventy-five (75) miles of each other, and thus was a covered employer under the FMLA pursuant to 29 CFR § 825.104.

18. At all times referenced herein, United Healthcare was an "employer" under the FMLA as that term is defined by 29 U.S.C. 2611(4)(A)(ii), in that United Healthcare was a person who acted in the interests of United Healthcare with respect to Spiller.

## FACTS

3

19. Spiller began working for United Healthcare in or about February 2023.

20. Spiller worked for United Healthcare as a Claims/Appeals Representative.

21. Spiller is African American.

22. Spiller received an annual performance review each year she worked for United Healthcare.

23. On each annual performance review, Spiller's overall evaluation was at or above "meets expectations."

24. In Spiller's most recent performance review, which was conducted in January 2025, Spiller was rated Category 3, which equates to "meets expectations."

25. Spiller was qualified for her job with United Healthcare.

26. Beginning in or about July 2024, Spiller's direct supervisor at United Healthcare was Lisa Harper.

27. Harper is African American.

28. Harper has a darker skin tone than Spiller.

29. At all times relevant to this complaint, Harper had the authority to terminate and discipline Spiller.

30. Before Harper became Spiller's supervisor, Spiller applied for intermittent FMLA leave to care for her daughter ("Initial FMLA Request").

31. At the time Spiller submitted her Initial FMLA Request, Spiller had been employed by United Healthcare for at least 12 months.

32. At the time Spiller submitted her Initial FMLA Request, Spiller had been employed by United Healthcare for at least 1,250 hours of service during the previous 12-month period.

33. Spiller's Initial FMLA Request was to allow Spiller to care for her child on an intermittent basis.

4

34. Spiller's daughter suffers from autism, attention deficit hyperactivity disorder, and sleep disorders.

35. Spiller's Initial FMLA Request was granted.

36. At various times prior to Harper becoming Spiller's supervisor, Spiller utilized her granted FMLA leave to care for her daughter.

37. When Harper became Spiller's supervisor, in or about July 2024, Harper reviewed Spiller's prior attendance record and issued Spiller a retroactive disciplinary action for dates and times that Spiller was absent from work ("Retroactive Disciplinary Action").

38. The prior absences for which Harper issued the Retroactive Disciplinary Action were approved FMLA leave absences.

39. Spiller told Harper that the absences were approved FMLA leave.

40. Spiller complained to the United Healthcare Associate Director of Human Capital, Scott Mallard, about the Retroactive Disciplinary Action.

41. Mallard removed the Retroactive Disciplinary Action and told Harper that the absences were approved FMLA leave.

42. After Harper became Spiller's direct supervisory, Harper made comments at various points about Spiller taking FMLA leave.

43. At multiple times and dates, Harper complained that too many people were taking FMLA leave.

44. When Spiller used her FMLA leave, Harper would announce to the other United Healthcare employees that Spiller was taking FMLA leave.

45. Spiller would not announce non-FMLA absences to other United Healthcare employees.

46. In or about December 2024, Harper made a comment about Spiller's race and skin color at a team meeting, saying, "I know you can't be African American" and that Spiller did not have African American hair ("December 2024 Racist and Colorist Remarks")

47. Spiller objected to the December 2024 Racist and Colorist Remarks during the meeting.

48. Spiller complained about racial discrimination to Mallard.

49. On or about May 3, 2025, Spiller filed a formal complaint with human resources regarding Harper's treatment of Spiller, including racial discrimination ("Complaint of Discrimination").

50. Spiller's Complaint of Discrimination included complaints that Harper had been making racially discriminatory remarks about Spiller during the team meetings that take place virtually through Microsoft Teams.

51. After Spiller filed her Complaint of Discrimination, Mallard told Harper to begin recording the team meetings.

52. One of Spiller's coworkers, Ariel Neuman, told Spiller that Harper had told her, "I know that Brittany told on me."

53. After Mallard told Harper to begin recording team meetings, Harper began issuing warnings to the employees about speaking up and complaining prior to recording the meeting.

54. During a team meeting conducted after Mallard told Harper to record team meetings, Harper stated that if employees spoke up, they would be kicked out of the meeting.

55. Harper did not start recording the team meeting until after she stated that if employees spoke up, they would be kicked out of the meeting.

56. During a team meeting conducted after Mallard told Harper to record team meetings, Harper warned employees to be careful with what they shared on an internal employee survey.

6

57. Harper did not start recording the team meeting until after she warned employees to be careful with what they shared on an internal employee survey.

58. On June 9, 2025, in a team meeting, Harper compared Spiller to a member of the Kardashian family ("Kardashian Remark").

59. Spiller understood Harper's Kardashian Remark to be a comment about her race and skin color.

60. Other employees expressed confusion as to the relevance of Harper's Kardashian Remark.

61. Spiller objected to the Kardashian Remark.

62. On June 11, 2025, Spiller was terminated.

63. Spiller was terminated by Harper.

64. The purported reason for termination given by Harper was that Spiller had not taken a break during a shift a month prior to the termination.

65. The purported reason for termination was false.

66. United Healthcare does not have a policy requiring employees to take breaks.

67. Spiller had in fact taken a break during the shift referenced by Harper.

68. Prior to her termination, Spiller explained to Harper that she had in fact taken a break during the shift.

69. Spiller was terminated by Harper five days after Spiller's most recent use of her FMLA leave, which occurred on or about June 6, 2025.

70. Spiller was terminated because of her race.

71. Spiller was terminated because of her skin color.

72. Spiller was terminated because of her opposition to race discrimination at United Healthcare.

73. Spiller was terminated because of her opposition to color discrimination at United Healthcare.

74. Spiller was terminated because of her Complaint of Discrimination.

7

75. Spiller was terminated because of her use of FMLA leave.

76. Spiller was terminated because of her opposition to unlawful FMLA practices.

## COUNT I: <u>RACE DISCRIMINATION IN VIOLATION OF TITLE VII</u>

77. Spiller restates each and every paragraph of this complaint as if it were fully restated herein.

78. Pursuant to 42 U.S.C. § 2000e-2(a)(1), it is an unlawful employment practice for an employer to discriminate against an employee "because of such individual's race."

79. Spiller is African American.

80. For the entirety of Spiller's employment with United Healthcare, Spiller was qualified for her position.

81. Throughout Spiller's employment with United Healthcare, Spiller's non-African American managers and supervisors discriminated against Spiller because of her race.

82. United Healthcare terminated Spiller because of her Race.

83. United Healthcare violated Title VII by discriminating against and terminating Spiller because of her Race.

84. As a result of United Healthcare's discrimination, Spiller suffered damages including but not limited to lost wages.

85. In its discriminatory actions as alleged above, United Healthcare acted with malice or reckless indifference to Spiller's rights, thereby entitling Spiller to an award of punitive damages.

86. To remedy the violations of Spiller's rights, secured by 42 U.S.C. § 2000e *et seq.*, Spiller requests that the Court award her the relief prayed for below.

## COUNT II: <u>COLOR DISCRIMINATION IN VIOLATION OF TITLE VII</u>

87. Spiller restates each and every paragraph of this complaint as if it were fully restated herein.

88. Pursuant to 42 U.S.C. § 2000e-2(a)(1), it is an unlawful employment practice for an employer to discriminate against an employee "because of such individual's…color."

89. Spiller has a light skin tone.

90. Spiller has a lighter skin tone than Harper

91. For the entirety of Spiller's employment with United Healthcare, Spiller was qualified for her position.

92. Throughout Spiller's employment with United Healthcare, Spiller's supervisor discriminated against her because of her color.

93. United Healthcare terminated Spiller because of her skin color.

94. United Healthcare violated Title VII by discriminating against and terminating Spiller because of her skin color.

95. As a result of United Healthcare's discrimination, Spiller suffered damages including but not limited to lost wages.

96. In its discriminatory actions as alleged above, United Healthcare acted with malice or reckless indifference to Spiller's rights, thereby entitling Spiller to an award of punitive damages.

## COUNT III: <u>RACE DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 1981</u>

97. Spiller restates each and every paragraph of this complaint as if it were fully restated herein.

98. United Healthcare violated Spiller's rights under the Civil Rights Act of 1866, 42 U.S.C. § 1981, as amended by the Civil Rights Act of 1991.

99. United Healthcare, by denying Spiller equal treatment to Caucasian employees and by terminating Spiller, intentionally deprived Spiller of the same rights as are enjoyed by Caucasian citizens to the creation, performance, enjoyment, and all benefits and privileges, of her employment relationship with United Healthcare, in violation of Section 1981.

9

100. As a result of United Healthcare denying Spiller equal treatment to Caucasian employees and by terminating Spiller in violation of Section 1981, Spiller has been denied employment opportunities providing substantial compensation and benefits, thereby entitling Spiller to injunctive, equitable, and compensatory monetary relief.

101. As a result of United Healthcare denying Spiller equal treatment to Caucasian employees and by terminating Spiller in violation of Section 1981, Spiller has suffered mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

102. United Healthcare's denying Spiller equal treatment to Caucasian employees and terminating Spiller in violation of Section 1981 was done with malice or reckless indifference to Spiller's rights, thereby entitling Spiller to an award of punitive damages.

103. To remedy the violations of Spillers' Section 1981 rights, Spiller requests that the Court award her the relief prayed for below.

## COUNT IV: <u>COLOR DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 1981</u>

104. Spiller restates each and every paragraph of this complaint as if it were fully restated herein.

105. United Healthcare violated Spiller's rights under the Civil Rights Act of 1866, 42 U.S.C. § 1981, as amended by the Civil Rights Act of 1991.

106. United Healthcare, by denying Spiller equal treatment to employees with different color skin and by terminating Spiller, intentionally deprived Spiller of the same rights as are enjoyed by citizens of different skin color to the creation, performance, enjoyment, and all benefits and privileges, of her employment relationship with United Healthcare, in violation of Section 1981.

107. As a result of United Healthcare denying Spiller equal treatment to employees with different color skin and by terminating Spiller in violation of Section 1981, Spiller has been denied employment opportunities providing substantial compensation and benefits, thereby entitling Spiller to injunctive, equitable, and compensatory monetary relief.

108. As a result of United Healthcare denying Spiller equal treatment to employees with different color skin and by terminating Spiller in violation of Section 1981, Spiller has suffered mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

109. United Healthcare's denying Spiller equal treatment to employees with different color skin and terminating Spiller in violation of Section 1981 was done with malice or reckless indifference to Spiller's rights, thereby entitling Spiller to an award of punitive damages.

110. To remedy the violations of Spillers' Section 1981 rights, Spiller requests that the Court award her the relief prayed for below.

## COUNT V: <u>RETALIATION IN VIOLATION OF TITLE VII</u>

111. Spiller restates each and every paragraph of this complaint as if it were fully restated herein.

112. Pursuant to 42 U.S.C. § 2000e-3, "It shall be an unlawful employment practice for an employer to discriminate against any of his employees…because he has opposed any practice made an unlawful employment practice by this subchapter."

113. Spiller opposed an unlawful employment practice when she filed her Complaint of Discrimination.

114. Spiller opposed an unlawful employment practice when she continued to object to and complain about discrimination and retaliation.

11

115. In response to Spiller's opposition to unlawful employment practices, United Healthcare retaliated against Spiller by disciplining and terminating Spiller.

116. As a result of United Healthcare's retaliation, Spiller suffered damages including but not limited to lost wages.

117. In its retaliatory actions as alleged above, United Healthcare acted with malice or reckless indifference to Spiller's rights, thereby entitling Spiller to an award of punitive damages.

118. To remedy the violations of Spiller's rights, secured by 42 U.S.C. § 2000e *et seq.*, Spiller requests that the Court award her the relief prayed for below.

## COUNT VI: <u>RETALIATION IN VIOLATION OF 42 U.S.C. § 1981</u>

119. Spiller restates each and every paragraph of this complaint as if it were fully restated herein.

120. United Healthcare violated Section 1981 by terminating Spiller because of her comments, complaints, and objections about and objections to what she reasonable believed to be racially and colorist motivated disparate treatment and discrimination against her.

121. As a direct and proximate result of United Healthcare's unlawful retaliatory conduct in violation of Section 1981, Spiller has suffered and continues to suffer monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation, and benefits for which Spiller is entitled to an award of monetary damages and other relief.

122. As a direct and proximate result of United Healthcare's unlawful retaliatory conduct in violation of Section 1981, Spiller has suffered and continues to suffer severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which Spiller is entitled to an award of monetary damages and other relief.

123. United Healthcare's unlawful retaliatory conduct constitutes a willful and wanton violation of Section 1981, was outrageous and malicious, was intended to injure Spiller, and was done with conscious disregard of Spiller's civil rights, entitling Spiller to an award of punitive damages.

124. To remedy the violations of Spiller's Section 1981 rights, Spiller request that the Court award her the relief prayed for below.

## COUNT VII: <u>UNLAWFUL RETALIATION IN VIOLATION OF THE FMLA</u>

125. Spiller restates every prior paragraph of this complaint as if fully restated herein.

126. While employed with United Healthcare, Spiller requested and was granted intermittent FMLA leave.

127. While employed with United Healthcare, Spiller was issued a Retroactive Disciplinary Action for absences that were covered FMLA leave.

128. Spiller objected to and opposed the unlawful Retroactive Disciplinary Action.

129. Subsequently, United Healthcare terminated Spiller in retaliation for her requesting FMLA leave and using her intermittent FMLA leave and for her opposing the unlawful Retroactive Disciplinary Action.

130. United Healthcare did not and could not have a good faith belief that it is lawful to terminate Spiller because she requested FMLA leave or because she opposed the unlawful Retroactive Disciplinary Action.

131. As a direct and proximate result of United Healthcare's wrongful conduct, Spiller is entitled to all damages provided for in 29 U.S.C. § 2617, including liquidated damages, costs, and reasonable attorney's fees.

## <u>DEMAND FOR RELIEF</u>

13

WHEREFORE, Brittany Spiller demands the following:

(a) An award against Defendant of compensatory and monetary damages to compensate Spiller for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $ 25,000 per claim to be proven at trial;

(b) An award of punitive damages against United Healthcare in an amount in excess of $25,000.

(c) An award of reasonable attorneys' fees and non-taxable costs for Spiller's claims as allowable under law;

(d) An award of liquidated damages;

(e) An award of the taxable costs of this action; and

(f) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

/s/ Evan G. Gungor, Esq.
Evan Gungor (60902)
SPITZ, THE EMPLOYEE'S LAW FIRM
5540 Centerview Drive
Suite 200B
Raleigh, NC 27606
Phone: (980) 332-4688
Fax:    (216) 291-5744
Email: evan.gungor@spitzlawfirm.com

*Attorneys For Plaintiff*
*Brittany Spiller*

14

## <u>JURY DEMAND</u>

Plaintiff Brittany Spiller demands a trial by jury by the maximum number of jurors permitted.

15